1

2

3                    **UNITED STATES DISTRICT COURT**

4                    **NORTHERN DISTRICT OF CALIFORNIA**

5                    **SAN JOSE DIVISION**

6

7     SCOTT JOHNSON,                          Case No.  18-cv-05718-BLF

8                    Plaintiff,

9          v.                                 **ORDER VACATING FEBRUARY 4,
                                              2021 HEARING ON MOTION FOR
10    MONTEREY & RANCHO PLAZA, et al.,        DEFAULT JUDGMENT; AND
                                              GRANTING PLAINTIFF'S MOTION
11                   Defendants.              FOR DEFAULT JUDGMENT**

                                              [Re:  ECF 42]
12

13          Plaintiff Scott Johnson brings this action against Monterey & Rancho Plaza and Tony

14    Dimaggio's Stromboli & Pizza, Inc. (together, "Defendants"), alleging violations of the

15    Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the California

16    Unruh Civil Rights Act (the "Unruh Act"), Cal. Civ. Code §§ 51–53. *See* Compl. ¶¶ 54–83, ECF

17    1. Mr. Johnson seeks injunctive relief along with statutory damages, attorneys' fees, and costs.

18          Defendants answered the Complaint on October 23, 2018. *See* Answer, ECF 11.

19    Defendants and Mr. Johnson also jointly stipulated to extend the site inspection deadline on

20    February 19, 2019 and, according to Mr. Johnson, initially reached a global settlement on June 24,

21    2019. *See* Joint Stipulation, ECF 14; Notice of Settlement, ECF 21. However, Defendants

22    abandoned the case after the June 2019 notice of settlement. Thereafter, upon Plaintiff's

23    advisement that Defendants had failed complete the settlement process, the Court attempted to

24    reinstate the case schedule leading up to trial. Over the course of almost one year, the Court issued

25    five orders compelling Defendants to respond and appear for hearings, which were ignored and

26    disobeyed. *See* Order Striking Answer, ECF 36. At Mr. Johnson's request, this Court stuck

27    Defendants' answer and entered default on July 30, 2020. *See* Order Striking Answer. The Clerk

28    of Court entered default as to Defendants on July 31, 2020. Entry of Default, ECF 37. Now before

United States District Court
Northern District of California

the Court is Mr. Johnson's Memorandum of Points and Authorities in Support of Corrected Application for Default Judgment ("Motion"). Mot., ECF 42-1. Defendants were notified of Mr. Johnson's Motion on September 9, 2020. *See* Notice of Filing, ECF 43; *see also* Fed. R. Civ. P. 55(b)(2). Defendants did not oppose or otherwise respond to the Motion. Briefing on the matter is now closed. *See* Civ. L.R. 7-3(a). Finding this matter suitable for submission without oral argument, the Court VACATES the hearing set for February 4, 2021 at 9:00 a.m. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court GRANTS Plaintiff's Motion for Default Judgment with the terms stated below.

## I.   BACKGROUND

According to his Complaint, Mr. Johnson is a level C-5 quadriplegic who cannot walk and has significant manual dexterity impairments. Compl. ¶ 1. Mr. Johnson says that he uses a wheelchair for mobility and has a specially equipped van. Compl. ¶ 1. Defendants are the alleged owners of the real property and business (the "Restaurant") open to the public located at or about 3852 Monterey Street, San Jose, California. *Id.* ¶¶ 2–9, 15.

Mr. Johnson alleges that barriers at the Restaurant prevented him from enjoying full and equal access to the facility. Compl. ¶¶ 16–46. Specifically, Mr. Johnson alleges that he visited the Restaurant on several occasions, including once in May 2018, twice in June 2018, and once in July 2018. Compl. ¶ 14; Mot. 1. During each of those visits, Mr. Johnson claims that he personally encountered the following types of access barriers:

> 1. Mr. Johnson claims that Defendants failed to provide accessible parking. Compl. ¶ 17.  Mr. Johnson claims that the Restaurant used to have two marked accessible parking spaces but they are now faded and there is no "NO PARKING" warning in the access aisles. Compl. ¶¶ 18–19. Mr. Johnson also claims that there is an insufficient number of accessible parking spaces—the Restaurant has 64 parking spaces but only two are reserved for persons with disabilities. Compl. ¶ 23. In addition, Mr. Johnson claims that the parking stalls and access aisle potentially reserved for persons with disabilities are not level with each other and have slopes greater than 2.1%. Compl. ¶¶ 20–21.

2. Mr. Johnson claims that, on the dates of his visits, Defendants had a transaction counter that was crowded with menus, a tip jar, and a card reader, which narrowed the clear width of the counter to less than 36 inches. Compl. ¶¶ 25–26. Therefore, Mr. Johnson claims that the transaction counter was not maintained in a manner that was readily accessible and useable to him. *See* Compl. ¶¶ 24–26.

3. Mr. Johnson claims that Defendants fail to provide accessible door hardware. Compl. ¶¶ 29–31. Particularly, during each of his visits, both the entrance door at the hallway leading to the restroom and restroom door hardware were traditional style round knobs that required the tight grasping and twisting of the wrist to operate. Compl. ¶¶ 29–31.

4. Mr. Johnson claims that Defendants have failed to provide accessible restrooms, mainly an accessible restroom sink. Mot. 11; *see* Compl. ¶¶ 33–41.

According to Mr. Johnson, Defendants' failure to provide accessible facilities created "difficulty, discomfort, and embarrassment" for him. Compl. ¶ 44. Mr. Johnson claims that he will return to the Restaurant once it is represented to him that the Restaurant and its facilities are accessible. Compl. ¶¶ 45, 52; Mot. 3.

## II. LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action, and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a).

After entry of default, a court may, in its discretion, enter default judgment. Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to enter default judgment, a court may consider the following factors, known as the *Eitel* factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In considering these factors, all factual

1 allegations in the plaintiff's complaint are taken as true, except those relating to damages.

2 *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). When the damages

3 claimed are not readily ascertainable from the pleadings and the record, a court may hold a hearing

4 to conduct an accounting, determine the amount of damages, establish the truth of any allegation

5 by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

6 **III.    JURISDICTION AND SERVICE OF PROCESS**

7    "When entry of judgment is sought against a party who has failed to plead or otherwise

8 defend, a district court has an affirmative duty to look into its jurisdiction over both the subject

9 matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

10    **A.    Subject matter jurisdiction**

11    District courts have subject matter jurisdiction of all civil actions arising under the laws of

12 the United States. 28 U.S.C. § 1331. Further, in any civil action where the district courts have

13 subject matter jurisdiction, the district courts will also have supplemental jurisdiction over all

14 other claims that are so related to claims in the action, such that they form part of the same case or

15 controversy. 28 U.S.C. § 1367. Mr. Johnson's claim for relief pursuant to the ADA presents a civil

16 action arising under a law of the United States. Therefore, this Court has subject matter

17 jurisdiction over Mr. Johnson's ADA claim. Moreover, Mr. Johnson's claim for relief pursuant to

18 the Unruh Act is related to the ADA claim because it arises out of the same "case or controversy,"

19 namely Mr. Johnson's visits to the Restaurant where he encountered alleged violations of both

20 laws. See 28 U.S.C. § 1367(a). Therefore, the Court has supplemental jurisdiction over Mr.

21 Johnson's Unruh Act claim.

22    **B.    Personal jurisdiction and service of process**

23    Serving a summons establishes personal jurisdiction over a defendant, who is subject to the

24 jurisdiction of a court of general jurisdiction in the state where the district court is located. Fed. R.

25 Civ. P. 4(k)(1). "With respect to a corporation [or partnership], the place of incorporation and

26 principal place of business are paradigm bases for general [personal] jurisdiction." *Daimler AG v.*

27 *Bauman*, 571 U.S. 117, 137 (2014) (internal citation and quotation marks omitted); *see also*

28 *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual,

United States District Court
Northern District of California

4

United States District Court
Northern District of California

the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.").

Pursuant to Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure, a domestic corporation may be served:

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1)(B). Alternatively, Rule 4 provides that service on a corporation may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1), (h)(1)(A).

California Code of Civil Procedure § 416.10 provides that a corporation may be served by "delivering a copy of the summons and the complaint ... [t]o the person designated as agent for service of process" or "[t]o the president, chief executive officer, or other head of a corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager or person authorized by the corporation to receive service of process." Cal. Code Civ. Proc. § 416.10(a), (b). In lieu of personal delivery, California law permits substituted service on a person to be served under § 416.10 by (1) "leaving a copy of the summons and the complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address . . . in the presence of a competent member of the household or a person apparently in charge" and (2) "thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Code Civ. Proc. § 415.20(b).

Mr. Johnson has submitted public records indicating that Defendants are domiciled in California and that they own the real property in San Jose, California on which the Restaurant is located, thereby establishing that personal jurisdiction exists over Defendants. *See* Mot. Ex. 5, Public Rs., ECF 42-9; *see also Daimler AG*, 571 U.S. at 137; *Goodyear*, 564 U.S. at 924. In addition, Mr. Johnson successfully served Defendant Monterey & Rancho Plaza in September and

1  October 2018 by delivering copies of the summons and complaint via substituted service to

2  Defendant Monterey and Rancho Plaza's General Partner's home and thereafter mailing a copy of

3  summons and complaint at the place where the copies were left. *See* Proof of Service of Summons,

4  ECF 10. Defendant Tony Dimaggio's Stromboli & Pizza, Inc. answered the Complaint on October

5  23, 2018 without raising issues of service of process. *See* Answer. As such, the Court is satisfied

6  that Mr. Johnson gave Defendants proper service of process under both the Federal Rules of Civil

7  Procedure and the California Code of Civil Procedure. Therefore, the Court has personal

8  jurisdiction over the Defendants.

9  **IV.   *EITEL* FACTORS**

10         For the reasons to be discussed, the *Eitel* factors weigh in favor of entering default

11  judgment.

12         **A.   The possibility of prejudice to Plaintiff**

13         The first *Eitel* factor requires the Court to consider whether Mr. Johnson would be

14  prejudiced if default judgment is not entered. Unless default judgment is entered, Mr. Johnson will

15  have no other means of recourse against Defendants. As such, Mr. Johnson will be prejudiced if

16  default judgment is not entered. *See, e.g.*, *Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL

17  2287668, at *5 (N.D. Cal. May 18, 2018) (finding that plaintiff would be prejudiced if default

18  judgment was not entered because she "would have no other means of recourse against Defendants

19  for the damages caused by their conduct").

20         **B.   The merits of Plaintiff's claims and the sufficiency of the complaint**

21         Pursuant to the second and third *Eitel* factors, this Court concludes that the Complaint

22  alleges meritorious substantive claims for relief under the ADA and the Unruh Act.

23         **i.   Title III of the ADA, 42 U.S.C. § 12101, *et seq.***

24         Title III of the ADA prohibits discrimination on the basis of disability within places of

25  public accommodation: "No individual shall be discriminated against on the basis of disability in

26  the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

27  accommodations of any place of public accommodation by any person who owns, leases (or leases

28  to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). For purposes of Title III,

United States District Court
Northern District of California

6

discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). "Readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

### a.  Plaintiff's Article III Standing

In order to bring a claim under Title III of the ADA, Mr. Johnson must establish Article III standing. To establish Article III standing, Mr. Johnson must demonstrate he suffered an injury in fact, traceable to Defendants' conduct, and redressable by a favorable court decision. *Ridola*, 2018 WL 2287668, at *5 (citing *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006)). Mr. Johnson claims that he suffers from a disability within the meaning of the ADA. Mot. 8–9. Mr. Johnson alleges that he personally encountered access barriers at the Restaurant with respect to the parking lot, transaction counter, door hardware, and restrooms. Compl. ¶¶ 14–43. Further, Mr. Johnson claims that he will return to the Restaurant once its facilities are made accessible. Compl. ¶ 45, 52; Mot. 3; *see Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1008 (C.D. Cal. 2014) ("Indeed, '[d]emonstrating an intent to return to a non-compliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief.'" (quoting *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 949 (9th Cir. 2011))).

Because Mr. Johnson's factual allegations are accepted as true, and an award of statutory damages and injunctive relief would redress Mr. Johnson's alleged injuries caused by Defendants' conduct, the Court finds that Mr. Johnson has Article III standing to sue under the ADA.

### b.  ADA Claim Elements

To prevail on his Title III discrimination claim, Mr. Johnson must show that (1) he is disabled within the meaning of the ADA; (2) Defendants own, lease, or operate a place of public accommodation; and (3) he was denied public accommodations by Defendants because of his disability. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). To succeed on an ADA claim based on architectural barriers, Mr. Johnson "must also prove that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily achievable." *Ridola*, 2018 WL 2287668, at *5.

United States District Court
Northern District of California

1    Mr. Johnson has adequately alleged an ADA claim. First, Mr. Johnson has established that

2  he has a disability within the meaning of the ADA. Under the ADA, a physical impairment that

3  substantially affects a major life activity, such as walking, qualifies as a disability. 42 U.S.C.

4  §§ 12102(1)(A), (2)(A). Mr. Johnson is a C-5 quadriplegic who uses a wheelchair for mobility.

5  Compl. ¶ 1; Mot. 1, 8. Second, Mr. Johnson alleges that Defendants own the Restaurant, a place of

6  public accommodation. Compl. ¶¶ 2–9, 15; *see also* 42 U.S.C. § 12181(7)(A) (listing "an inn,

7  hotel, motel, or other place of lodging" as a place of public accommodation). Third, Mr. Johnson

8  alleges that during several visits to the Restaurant, he personally encountered access barriers with

9  respect to the parking lot, transaction counter, door hardware, and restrooms. Compl. ¶¶ 14–43;

10  Mot. 9.

11    Next, with respect to the architectural barriers, Mr. Johnson contends that Defendants'

12  parking lot, transaction counter, door hardware, and restroom are architectural barriers that violate

13  the 1991 and 2010 Standards of the ADA Accessibility Guidelines (the "ADAAG"). Mot. 9–12.

14  The ADAAG provide "objective contours of the standard that architectural features must not

15  impede disabled individuals' full and equal enjoyment of accommodations." *Chapman*, 631 F.3d

16  at 945. As such, "a violation of the ADAAG constitutes a barrier under the ADA." *Ridola*, 2018

17  WL 2287668, at *7. However, Mr. Johnson incorrectly applies the 2010 Standards to his claims.

18  The 1991 Standards apply to construction completed before March 15, 2012, while the 2010

19  Standards apply to construction or alterations after that date. *See id.* ("Alterations to facilities

20  undertaken after March 15, 2012 must comply with the 2010 Standards." (citing 28 C.F.R.

21  § 35.151(c)(5)(i))). Here, Mr. Johnson submits public records showing that the Restaurant was

22  constructed in 1954, prior to March 2012, but does not submit evidence that construction or

23  alteration has been made to the Restaurant since 1954. *See* Public Rs. 6. Accordingly, the Court

24  applies the 1991 ADAAG Standards. However, the 2010 Standards govern any injunction that the

25  Court issues, as all remedial work will be undertaken after March 15, 2012.

26    Mr. Johnson claims that the Restaurant's failure to provide accessible parking violates the

27  ADAAG Standards. Mot. 9–11. First, Mr. Johnson argues that the Restaurant fails to provide

28  properly marked and designated parking spaces and fails to display a "NO PARKING" sign near

accessible parking spaces. Mot. 9–10. Rather than contending the deficiencies violated any express ADA or ADAAG provision, Mr. Johnson argues, "[u]nder the ADA, the method, color of marking, and length of the parking space are to be addressed by State or local law or regulations." Mot. 9. And because the identified deficiencies purportedly violate the California Building Code ("CBC"), Mr. Johnson contends they violate the ADA. Mot. 9–10. However, this Court maintains that "there is [] no basis for treating a violation of the California Building Code as a per se violation of the ADA." *Johnson v. Cala Stevens Creek/Monroe, LLC*, 401 F. Supp. 3d. 904, 913 (N.D. Cal. 2019); *see also Shaw v. Kelley*, No. 16-CV-03768-VKD, 2019 WL 497620, at *4 (N.D. Cal. Feb. 7, 2019) ("[A] purported failure to comply with a provision of the California Building Code is not a violation of the ADA."); *Johnson v. 42816 Mission Blvd LLC*, No. 17-CV-03040-CRB, 2018 WL 3008677, at *2 (N.D. Cal. June 15, 2018) ("Johnson's attempt to premise an ADA violation on the California standard regarding lettering fails."). Therefore, the Court finds that the Restaurant's improper markings and signage do not rise to an ADA violation.

Second, Mr. Johnson alleges there is an insufficient number of accessible parking spaces at the Restaurant. Compl. ¶ 23. Under the 1991 ADAAG Standards, there must be a minimum of three accessible parking spaces in a parking lot that has a total of 51 to 75 spaces. 28 C.F.R. Pt. 36, App. A § 4.1.2(5)(a). During Mr. Johnson's visits to the Restaurant, he encountered only two "faded, uneven" parking spaces reserved for persons with disabilities out of approximately 64 parking spaces total. Compl. ¶ 23. Therefore, accepting the Mr. Johnson's allegations as true, the Court agrees with Mr. Johnson's allegations that the lack of van accessible parking represents a violation of the ADA (or, as discussed below, the Unruh Act).

Third, Mr. Johnson claims that the parking stalls and access aisles reserved for persons with disabilities were not level with each other and had greater slopes than 2.1%. Compl. ¶¶ 20–21; Mot. 10–11. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding a one to fifty ratio (2%) in all directions. 28 C.F.R., Pt. 36, App. D § 4.6.3. "An essential consideration for any design is having the access aisle level with the parking space." *Id.* "Since a person with a disability, using a lift or ramp, must maneuver within the access aisle, the aisle cannot include a ramp or sloped area." *Id.* Mr. Johnson alleges that the access aisle

1
2
3
4
5

between the accessible parking spaces has a slope exceeding a one to fifty ratio. Mot. at 10–11; *see* Mot. Ex. 4, Pictures 49–52, ECF 42-8. Accepting Mr. Johnson's allegations as true, the Court finds that he has successfully demonstrated that the Restaurant's parking aisle is not in compliance with the ADA (or, as discussed below, the Unruh Act) and that the condition of the parking aisle denied him full and equal access to the Restaurant and parking lot because of his disability.

In addition, Mr. Johnson claims that the Restaurant failed to provide an accessible transaction counter. Compl. ¶ 25–26. Mr. Johnson alleges that the Restaurant's transaction counter was not readily accessible and useable to him because Defendants placed menus, a tip jar, and a card reader on the dates of his visits. Compl. ¶ 25–26. However, merely alleging that a sales counter was cluttered with merchandise is insufficient by itself to support the conclusion that a wheelchair user was deprived of "full and equal" access to the services of a public accommodation. *See Johnson v. Starbucks Corp.*, No. 2:16-cv-2797 WBS AC, 2019 WL 699136, at *5 (E.D. Cal. Feb. 20, 2019) (denying summary judgment on allegation of "counter [] cluttered with merchandise"); *see also Johnson v. Starbucks Corp.*, 818 F. App'x 657, 660 (9th Cir. 2020) (affirming summary judgment of ADA claims in favor of Starbucks Corp. where plaintiff alleged that a transaction counter was less than 36 inches long because it was covered by merchandise displays). Consequently, Mr. Johnson has failed to show that he was denied public accommodations with respect to the transaction counter.

Mr. Johnson also claims that the Restaurant fails to provide accessible door hardware, resulting in violation of the ADA. Compl. ¶¶ 28–31; Mot. 11. According to Mr. Johnson, the door hardware at the hallway leading to the restroom and the restroom door hardware had a "traditional style round knob that required tight grasping and twisting of the wrist to operate." Compl. ¶¶ 29–31. Mr. Johnson correctly notes that the 1991 ADAAG Standards provide that door hardware must have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. *See* Mot. 11. The 1991 ADAAG Standards provide: "Handles, pulls, latches, locks, and other operating devices on accessible doors shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate." *See* 28 C.F.R. Pt. 36, App. A § 4.13.9; *see also* 28 C.F.R. Pt. 36, App. A

§ 4.23.2 ("Doors to accessible bathrooms shall comply with 4.13."). Accepting Mr. Johnson's allegations as true, the Court finds that he has successfully demonstrated that the Restaurant's lack of accessible door hardware violates the ADA.

Finally, Mr. Johnson claims that the Restaurant's failure to provide an accessible restroom sink violates the 1991 ADAAG Standards. Mot. at 11. Particularly, Mr. Johnson claims the Restaurant's sinks failed to "provide knee clearance of at least 29 inches in height", in violation of the 1991 ADAAG Standards. Mot. 11; *see* Compl. ¶ 40; Pictures 32–33. Under the 1991 ADAAG Standards, "[k]nee clearance that is at least 27 in (685 mm) high, 30 in (760 mm) wide, and 19 in (485 mm) deep shall be provided underneath sinks." 28 C.F.R. Pt. 36, App. A § 4.24.3. Accepting Mr. Johnson's allegations as true, the Court finds that he has successfully demonstrated that the Restaurant's lack of accessible restroom sinks violates the ADA (or, as discussed below, the Unruh Act) and that the restroom denied him full and equal access to the Restaurant because of his disability.

With respect to the "readily achievable" element of his ADA claim, citing *Wilson v. Haria & Gogri Corp.*, Mr. Johnson argues that the question of whether removal of the barriers is "readily achievable" is an affirmative defense that must be pled by the answering party. *See* Mot. at 11–12; *see also* 479 F. Supp. 2d 1127, 1133 (E.D. Cal. 2007). Accordingly, Mr. Johnson believes that this affirmative defense has been waived because Defendants' answer has been struck and Defendants have not otherwise appeared in this matter. *See* Mot. at 11–12; Order.

The Ninth Circuit recently decided to follow a burden-shifting framework to determine who bears the burden of proving that removal of an architectural barrier is readily achievable. *See Lopez v. Catalina Channel Express, Inc.*, No. 19-55136, 2020 WL 5405677, at *3–*5 (9th Cir. Sept. 9, 2020). Under this burden-shifting analysis, the plaintiff bears the initial burden of *plausibly* showing that a proposal for removing a barrier is readily achievable, and then the defendant bears the ultimate burden of persuasion on an affirmative defense that removal of a barrier is not readily achievable. *See id.*

In this action, Mr. Johnson has met his initial burden to plausibly show that removal of the identified barriers—the parking spaces, door hardware, and restroom sink—is readily achievable.

United States District Court
Northern District of California

1   Mr. Johnson alleges that the identified barriers are "easily removed without much difficulty or

2   expense" and that they are "the types of barriers identified by the Department of Justice as

3   presumably readily achievable to [be] remove[d]." Compl. ¶ 47. Additionally, the Complaint

4   alleges that "there are numerous alternative accommodations" to provide people with disabilities a

5   greater level of access even if Defendants could not achieve a complete removal of barriers.

6   Compl. ¶ 47. Mr. Johnson provides such alternative accommodation examples with sample

7   pricing. Compl. ¶¶ 48–51.

8        Federal regulations provide a non-exclusive list of steps to remove barriers, including

9   "[c]reating designated accessible parking spaces," 28 C.F.R. § 36.304(b)(18), and "[i]nstalling

10  accessible door hardware," 28 C.F.R. § 36.304(b)(11). Courts have also observed that the listed

11  items are "examples of readily achievable steps to remove barriers." *Johnson v. Altimira Corp.*,

12  No. 16-cv-05335 NC, 2017 WL 1383469, at *3 (N.D. Cal. 2017). Moreover, at the default

13  judgment stage, courts have found allegations similar to Mr. Johnson's allegations sufficient to

14  show that the removal of the barriers at issue is readily achievable. *See, e.g.*, *Ridola*, 2018 WL

15  2287668, at *10–*11 (concluding that plaintiff met his burden with respect to defendant's parking

16  spaces and guestrooms).

17       Because Mr. Johnson has met his burden, Defendants now have the burden of persuasion

18  on an affirmative defense that removal of the identified barriers is not readily achievable. Here,

19  Defendants defaulted and have not defended this action. Thus, Defendants have failed to meet

20  their burden to show that removal of the identified barriers is not readily achievable.

21       In sum, the Court finds that Mr. Johnson has alleged the requisite elements for an ADA

22  claim.

23               **ii.    Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53**

24       "Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *M.J.*

25  *Cable, Inc.*, 481 F.3d at 731 (citing Unruh Act, Cal. Civ. Code § 51(f)). Thus, because Mr.

26  Johnson has alleged an ADA claim based on the Restaurant's parking spaces and slope, door

27  hardware, and restroom, he has also alleged an Unruh Act claim based on those barriers.

28

United States District Court
Northern District of California

### C.   The amount of money at stake

The fourth *Eitel* factor requires the Court to consider the sum of money at stake in relation to the seriousness of a defendant's conduct. *Love v. Griffin*, No. 18-cv-00976-JSC, 2018 WL 4471073, at *5 (N.D. Cal. Aug. 20, 2018). Mr. Johnson seeks statutory damages of $16,000 under the Unruh Act and an award of $4,731 for attorneys' fees and costs. The Court has reduced this amount, as discussed below. While the sum awarded is not insignificant, the Court finds that it is proportional to the conduct alleged and that this factor weighs in favor of default judgment.

### D.   The possibility of a dispute concerning material facts and whether Defendants default was due to excusable neglect

Under the fifth and sixth *Eitel* factors, the Court considers whether there is a possibility of a dispute over any material fact and whether Defendants' failure to respond was the result of excusable neglect. *Griffin*, 2018 WL 4471073, at *5; *Ridola*, 2018 WL 2287668, at *13. Because Mr. Johnson pleads plausible claims for violations of the ADA and the Unruh Act, and as all liability-related allegations are deemed true, there is nothing before the Court that would indicate a possibility of a dispute as to material facts. Moreover, there is no indication that Defendants' default was due to excusable neglect. Defendants have abandoned the case and ignored five prior court orders, suggesting that they have chosen not to present a defense in this matter. Accordingly, these factors weigh in favor of default judgment.

### E.   The strong policy favoring decisions on the merits

While the Court prefers to decide matters on the merits, Defendants' failure to participate in this litigation makes that impossible. *See Ridola*, 2018 WL 2287668, at *13 ("Although federal policy favors decision on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate."). Default judgment, therefore, is Mr. Johnson's only recourse. *See United States v. Roof Guard Roofing Co.*, No. 17-cv-02592-NC, 2017 WL 6994215, at *3 (N.D. Cal. Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile, default judgment is the appropriate outcome."). As such, the seventh *Eitel* factor weighs in favor of default judgment.

### F.   Conclusion

After considering all seven *Eitel* factors and the circumstances of this case, the Court finds

13

1    that default judgment is warranted and GRANTS Plaintiff's motion for default judgment against

2    Defendants.

3    **V.     REQUESTED RELIEF**

4           Because this Court concludes that default judgment is warranted, it now considers Mr.

5    Johnson's request for injunctive relief, statutory damages under the Unruh Act, and attorneys' fees

6    and costs.

7           **A.     Injunctive relief**

8           Mr. Johnson requests an order directing Defendants to bring the Restaurant's parking

9    spaces and lot, transaction counter, door hardware, and restroom into compliance with the 2010

10   ADAAG Standards. *See* Mot. 1, 14. "A plaintiff need not satisfy '[t]he standard requirements for

11   equitable relief . . . when an injunction is sought to prevent the violation of a federal statute [that]

12   specifically provides for injunctive relief.'" *Griffin*, 2018 WL 4471073, at *6 (quoting *Moeller v.*

13   *Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011)). Under the ADA, aggrieved individuals

14   "may obtain injunctive relief against public accommodations with architectural barriers, including

15   'an order to alter facilities to make such facilities readily accessible to and usable by individuals

16   with disabilities.'" *M.J. Cable, Inc.*, 481 F.3d at 730 (quoting 42 U.S.C. § 12188(a)(2)). Injunctive

17   relief is also available under the Unruh Act. *See* Cal. Civ. Code § 52.1(h). Injunctive relief is

18   proper where the plaintiff establishes that "architectural barriers at the defendant's establishment

19   violate the ADA and the removal of the barriers is readily achievable." *Ridola*, 2018 WL 2287668,

20   at *13 (internal citation omitted). As discussed above for the second and third *Eitel* factors, Mr.

21   Johnson has demonstrated that the number of accessible parking spaces, parking lot aisle slope,

22   door hardware, and restroom sink at the Restaurant violate the ADA and that the removal of the

23   associated barriers is readily achievable.

24          Accordingly, the Court grants Plaintiff's request for injunctive relief to bring the

25   Restaurant's parking lot spaces and slope, door hardware, and restroom in line with the 2010

26   ADAAG Standards.

27          **B.     Statutory damages**

28          Mr. Johnson seeks $16,000 in statutory damages for the Restaurant's violation of the

United States District Court
Northern District of California

1    Unruh Act. Mot. 14–15. The Unruh Act provides a minimum statutory damages award of $4,000

2    for each violation. Cal. Civ. Code § 52(a). Mr. Johnson "need not prove [he] suffered actual

3    damages to recover the independent statutory damages of $4,000." *M.J. Cable, Inc.*, 481 F.3d at

4    731. "Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *Id.* at 731

5    (citing Unruh Act, Cal. Civ. Code § 51(f)). Mr. Johnson has sufficiently pled that the number of

6    accessible parking spaces, parking lot slope, door hardware, and restroom sink at the Restaurant

7    violated the ADA on the four separate occasions he visited the Restaurant. As such, these barriers

8    at the Restaurant constitute a violation of the Unruh Act.

9         The Court understands that Mr. Johnson is only requesting statutory damages. However,

10   Mr. Johnson does not explain why he visited and returned to the Restaurant so many times over a

11   three-month period. *See* Compl. ¶ 14. There is no indication in the record that Mr. Johnson

12   received any type of assurance that the access barriers were removed. The Court can only assume

13   the multiple visits were intended to increase the amount of statutory damages Mr. Johnson could

14   receive in this case. *See Pickern v. Nord Mkt.*, No. 2:17-CV-1130-JAM-CMK, 2017 WL 6622749,

15   at *4 (E.D. Cal. Dec. 28, 2017) (reducing the plaintiff's request for statutory damages under the

16   Unruh Act for four visits to two visits because the Court could only "assume [the plaintiff's]

17   frequent visits were only intended to increase the amount of damages she could receive in such a

18   case"). The sheer number of ADA cases that Mr. Johnson is litigating in this District also indicates

19   that Mr. Johnson is simply interested in increasing the amount of damages received in such cases.

20   *See Johnson v. Baglietto*, No. 19-CV-06206-TSH, 2020 WL 3065939, at *11 (N.D. Cal. May 21,

21   2020), *report and recommendation adopted*, No. 19-CV-06206-HSG, 2020 WL 3060902 (N.D.

22   Cal. June 9, 2020) ("[Plaintiff's counsel] has stated that as of November 7, 2019, [Plaintiff's

23   counsel's firm], consisting of 20 lawyers, was simultaneously litigating 'over a thousand' ADA

24   cases in the Northern District of California and approximately 1,500 ADA cases in the Central

25   District of California. The law firm had previously litigated approximately 2,500 ADA cases in

26   the Eastern District of California." (internal citations omitted)). Therefore, the Court finds Mr.

27   Johnson's request for statutory damages for four visits is unreasonable and that he is only entitled

28   to statutory damages corresponding to one (1) visit to the Restaurant, i.e., $4,000. This is a

United States District Court
Northern District of California

comparable amount to similar ADA cases. *See, e.g.*, *Johnson v. Chi Mai*, No. 19-CV-00827-BLF, 2020 WL 5074191, at *1, *4 (N.D. Cal. Aug. 26, 2020) (awarding Mr. Johnson $4,000 in statutory damages despite two visits to the nail salon allegedly in violation of the ADA and Unruh Act); *Johnson v. VN All. LLC*, No. 18-CV-01372-BLF, 2019 WL 2515749, at *1, *7 (N.D. Cal. June 18, 2019) (awarding Mr. Johnson's requested amount of $4,000 despite four visits to the Inn allegedly in violation of the ADA and Unruh Act). The Court, therefore, grants Mr. Johnson $4,000 in statutory damages.

### C.    Attorneys' fees

Mr. Johnson requests $3,896 in attorneys' fees under both the ADA and the Unruh Act. Mot. 15. In support of the fees requested, Mr. Johnson presents detailed billing entries attached to a Russell Handy's Declaration, expert analysis of fees for ADA-plaintiff attorneys by fee experts Richard Pearl and John O'Connor, and a survey report pulled from the Real Rate Report for 2018. Mot. 15–18; *see* Mot. Ex. 1, Decl. of Russell Handy ("Handy Decl."), ECF 42-4[1]; Mot. Ex. 6, Decl. of Richard M. Pearl ("Pearl Decl."), ECF 42-10; Mot. Ex. 7, Real Estate Report, ECF 42-11; Mot. Ex. 8, Decl. of John D. O'Connor ("O'Connor Decl."), ECF 42-12.

Further, Mr. Johnson cites four cases from the Northern District of California that have granted attorneys' fees at the hourly rates Mr. Johnson is requesting. Mot. 17, 20. The Court, however, is not persuaded that this evidence justifies the attorneys' fees requested by Mr. Johnson.

#### i.    Legal Standard

The ADA gives courts the discretion to award attorneys' fees to prevailing parties. *M.J. Cable, Inc.*, 481 F.3d at 730 (citing 42 U.S.C. § 12205). Additionally, the Unruh Act provides that "[i]n addition to any damages, injunction, or other equitable relief awarded in an action brought pursuant to [Cal. Civ. Code § 52.1(b)], the court may award the petitioner or plaintiff reasonable attorney's fees." Cal. Civ. Code § 52.1(i).

Whether calculating attorneys' fees under California or federal law, courts follow "the

---

[1] The Court notes that Mr. Handy states he is the attorney on record for the moving party, "Plaintiff Samuel Love," but the plaintiff in this case is Plaintiff Scott Johnson. *See* Handy Decl. ¶ 1.

United States District Court
Northern District of California

'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)). Under the lodestar method, the most useful starting point "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *abrogated on other grounds by Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989). The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Id.*

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th. Cir. 1997). The fee applicant bears the burden of producing evidence, other than declarations of interested counsel, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum*, 465 U.S. at 896 n.11.

Further, the district court should exclude hours that were not reasonably expended. *See Hensley*, 461 U.S. at 434. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended." *Hensley*, 461 U.S. at 437.

### ii.   Discussion

#### a.   Rates

As an initial matter, the Court finds multiple discrepancies between the hourly rates provided in the Motion, the billing statement, and Mr. Handy's declaration. *See* Mot. Ex. 1, Billing Statement, ECF 42-5; Handy Decl. ¶ 3–7; Mot. 20. First of all, the Motion itself does not seek fees for attorney Chris Carson, but she does appear in Mr. Handy's declaration and the submitted billing statement. Mot. 20; *see* Billing Statement 2–3; Handy Decl. ¶ 5. In addition, in the Motion and billing statement, Mr. Johnson notes that attorneys Mark Potter and Russel Handy

charge $595 per hour. *See* Billing Statement 2–3; Mot. 20. According to Mr. Handy's declaration, however, Mr. Potter and Mr. Handy charged $650 per hour. *See* Handy Decl. ¶ 3–4. The Court need not scrutinize these discrepancies because it is not persuaded that Mr. Johnson's arguments justify even the lower rates of $595 per hour.

The Court finds that the rates Mr. Johnson seeks exceed the rates granted in this community for similar work performed by attorneys of comparable skill, experience, and reputation. The relevant community for this action is the Northern District of California. Indeed, for attorneys with approximately 20 or more years of experience, courts in this district have generally approved hourly rates ranging from $350 to $495 in disability cases. *See, e.g.*, *Castillo-Antonio v. Lam*, No. 18-cv-04593-EDL, 2019 WL 2642469, at *7 (N.D. Cal. Apr. 10, 2019) (approving, on motion for default judgment, $350 hourly rate for attorney with over 20 years of experience); *Johnson v. Castagnola*, No. 18-cv-00583-SVK, 2019 WL 827640, at *2 (N.D. Cal. Feb. 21, 2019) (approving $350 hourly rate for attorney with 20 years of litigation experience, noting that requested rate was unopposed by defendant and in line with rates approved in Northern District); *Wilson v. Red Robin Int'l, Inc.*, No. 17-cv-00685-BLF, 2018 WL 5982868, at *3 (N.D. Cal. Nov. 14, 2018) (approving $495 hourly rate for attorney with 24 years of experience in civil rights litigation, including 12 years devoted to disability law and $475 hourly rate for attorney with over 17 years of litigation experience and more than 8 years of experience in disability law).

Here, Mr. Handy has 20 years of experience, Mr. Potter has 25 years of experience, Ms. Seabock has about nine years of experience, Ms. Carson has over five years of experience, and Ms. Gutierrez has less than five years of experience focusing on disability cases. *See* Handy Decl. ¶ 3–7. This Court is mindful of the Ninth Circuit's observation that "[t]he district court's function is to award fees that reflect economic conditions in the district; it is not to 'hold the line' at a particular rate, or to resist a rate because it would be a 'big step.'" *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). Mr. Handy and Mr. Potter have recently been granted hourly rate increases, from $425 to $475, in actions representing Mr. Johnson, and Ms. Seabock and Ms. Carson has recently been granted an hourly rate of $350. *See Johnson v. Patel*, No. 18-CV-00211-MMC, 2020 WL 1865304, at *5–*6 (N.D. Cal. Apr. 14, 2020) (awarding fees for Ms. Carson at

$350 per hour); *Johnson v. Oakwood Ctr. LLC*, No. 19-cv-01582-VKD, 2019 WL 7209040, at *12 (N.D.Cal. Dec. 27, 2019) (denying Mr. Potter and Mr. Handy an hourly rate of $650, instead granting an hourly rate of $475; granting Ms. Seabock an hourly rate of $350); *see also VN All. LLC*, 2019 WL 2515749 (granting Mr. Potter and Mr. Handy an hourly rate of $425). In view of the range of rates approved for attorneys practicing in this field, and further recognizing that "decisions pertaining to the same attorneys in question are particularly salient," the Court awards fees for Mr. Handy and Mr. Potter at $475 per hour and for Ms. Seabock and Ms. Carson at $350 per hour. *See Patel*, 2020 WL 1865304, at *6; *Oakwood Ctr. LLC*, 2019 WL 7209040, at *12. As an attorney who graduated less than five years ago and has less than five years of experience litigating disability cases, this court awards Ms. Gutierrez $250 per hour. *See Johnson v. AutoZone, Inc.*, No. 17-CV-02941-PJH, 2019 WL 2288111, at *7 (N.D. Cal. May 29, 2019) (awarding a $250 hourly fee rate for attorneys who graduated law school between five and eight years ago in a similar ADA case involving Mr. Johnson, who was represented by the same firm in this action).

The Court is not persuaded by Mr. Johnson's cited cases or support. To support the reasonableness of the hourly rates in the Motion ($595, $450, and $400), Mr. Johnson relies on *In re Linkedin* and *In re Magsafe* as examples of attorneys' rates in the Northern District of California. *See* Mot. 17 (citing *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015), and *In re Magsafe Apple Power Adapter Litig.*, No. 5:091-cv-01911-EJD, 2015 WL 428105, at *11-12 (N.D. Cal. Jan. 30, 2015)). *In re Linkedin* and *In re Magsafe*, however, are both class action suits that do not contain any ADA claims. *See In re Linkedin*, 309 F.R.D. at 580–81; *In re Magsafe*, 2015 WL 428105, at *1. Moreover, the relevant community is only one of the considerations when determining an appropriate hourly rate. Mr. Johnson does not provide any information about the skill, experience, or reputation of the attorneys in either of those cases. Therefore, the Court is not persuaded that the rates awarded in either case are appropriate here.

Next, Mr. Johnson relies on declarations by fee experts Richard Pearl and John O'Connor along with a survey report from the Real Rate Report for 2018. *See* O'Connor Decl.; Pearl Decl.; Real Estate Report. In his declaration, Mr. Pearl's survey of ADA cases shows that attorneys with

20 to 25 years of experience had court-approved rates of between $500 and $675 per hour, while attorneys with more than six years of experience had court-approved rates ranging between $350 and $425 per hour. Pearl Decl. ¶ 9(a). Attorneys with less than five years of experience had court-approved rates ranging between $250 and $435 per hour. Pearl Decl. ¶ 9(a). Similarly, the Real Rate Report shows that median rates for partners doing litigation work in San Jose is $675 per hour and median rates for associates is $495 per hour. Real Estate Report 016. However, Mr. Pearl's declaration and the Real Rate Report fail to consider the nature of work done and the skill or reputation of the attorneys in each case. As such, the Court is not persuaded that Mr. Pearl's declaration or the Real Rate Report provide a more salient assessment of rates than those previously granted to Mr. Johnson's attorneys.

In addition, Mr. O'Connor states in his declaration that reasonable partner fee rates in ADA cases range from $450 to $750 per hour, while an appropriate range for associates is between $350 and $550 per hour. O'Connor Decl. ¶ 33. This is similar to what the Court has awarded to Mr. Johnson's attorneys in this case, and Mr. Johnson does not adequately justify the high ends of the stated rates. "[W]hen a matter 'is a relatively simple one, involving straight-forward application of the law, and which does not present novel or difficult issues requiring a high level of skill or specialization,' courts have generally found that higher rates are unwarranted." See *Baglietto*, 2020 WL 3065939, at *11 (citing *Oakwood Ctr. LLC*, 2019 WL 7209040, at *13). And as mentioned above, "[t]he sheer number of ADA cases that [Mr. Johnson's] counsel is litigating [] underscores the straightforward nature of their cases." *Id.*

Lastly, Mr. Johnson cites to two decisions by another court in this district: *Love v. Rivendell II, Ltd.*, in which the court approved a $650 hourly rate for Mr. Potter and Mr. Handy and a $410 hourly rate for Ms. Carson, and *Johnson v. Khalsa*, in which the court approved a $650 hourly rate for Mr. Potter and Mr. Handy and a $450 hourly rate for Ms. Seabock. *See* Mot. 20; *see also* R. & R., *Love v. Rivendell II, Ltd.*, No. 18-cv-03907-JST (EDL) (N.D. Cal. Mar. 11, 2019) ("R. & R., *Love v. Rivendell II, Ltd.*"), ECF 25; Order Adopting R. & R., *Love v. Rivendell II, Ltd.*, No. 18-cv-03907-JST (EDL) (N.D. Cal. Apr. 18, 2019), ECF 30; R. & R., *Johnson v. Khalsa*, No. 4:19-cv-02725-SBA (N.D. Cal. March 24, 2020) ("R. & R., *Johnson v. Khalsa*"),

United States District Court
Northern District of California

ECF 25; Order Adopting R. & R., *Johnson v. Khalsa*, No. 4:19-cv-02725-SBA (N.D. Cal. April 8, 2020), ECF 26. In both *Rivendell* and *Khalsa*, Mr. Johnson asked for fees as part of a motion for default judgment, and, as with his claim here, Mr. Johnson alleged that the defendants failed to provide accessible parking spaces for disabled persons. *See* R. & R., *Johnson v. Khalsa*; R. & R., *Love v. Rivendell II, Ltd.* As other courts in this district recently observed, the *Rivendell* decision relied on cases, such as *Civil Rights Education* and *Rodriguez*, that concerned work that was substantially different than the work performed in the present action. *See, e.g.*, *Oakwood Ctr. LLC*, 2019 WL 7209040, at *11 (granted default judgment in ADA case but distinguished case from *Civil Rights Education* and *Rodriguez*); *AutoZone, Inc.*, 2019 WL 2288111, at *6 n.4 (same). Indeed, *Civil Rights Education* was a complex class action matter involving 54 hotels spread among multiple states and *Rodriguez* involved an ADA claim that included trial and post-trial attorneys' fees. *See Civil Rights Educ. and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.*, No. 15-cv-00216-DMR, 2016 WL 1177950, at *1 (N.D. Cal. Mar. 22, 2016); *Rodriguez v. Barrita*, 53 F. Supp. 3d 1268, 1279–80 (N.D. Cal. 2014). And the *Khalsa* decision in awarding attorneys' fees was reached without explicitly relying on any case law. *See* R. & R., *Johnson v. Khalsa*, at 6. Therefore, the Court is not persuaded that the rates awarded in *Rivendell* or *Khalsa* are appropriate here. Aside from *Rivendell* and *Khalsa*, Mr. Johnson does not identify any other rulings in which courts have awarded Mr. Johnson fees at this rate for any of his attorneys. *See* Mot. 20. As such, the Court is not persuaded that Mr. Johnson's evidence justifies the rates he is requesting.

### b.  Hours

Mr. Johnson requests fees based on 8.1 hours of work. *See* Billing Statement 1. This Court and other courts in this district have found approximately 11 hours of work to be reasonable for similar cases. *See, e.g.*, *Ridola*, 2018 WL 2287668 at *17 (granted motion for default judgment in ADA case, found 11.1 hours to be reasonable); *VN Alliance LLC*, 2019 WL 2515749, at *8 (granted motion for default judgment in ADA case, found 11.3 hours to be reasonable). Mr. Johnson's billing statement shows 8.1 hours were expended in this litigation: Mr. Handy and Mr. Potter together expended 2.8 hours, Ms. Seabock and Ms. Carson expended 2.2 hours, and Ms.

United States District Court
Northern District of California

Gutierrez expended 3.1 hours. *See* Billing Statement 2–3. Further, the Court has reviewed the itemized statement of Mr. Johnson's counsel's legal work and finds no issue with the amount of time or activities that Mr. Johnson's counsel has conducted. Billing Statement 2–3.

### iii.    Conclusion

In sum, the Court finds the adjusted hourly rates of $475, $350, and $250 and the 8.1 hours expended to be reasonable. Mr. Johnson does not request a multiplier for the lodestar amount. Multiplying the reasonable hourly rates, $475, $350 and $250, and the hours reasonably expended, 2.8, 2.2., and 3.1 respectively, yields a lodestar amount of $2875 in attorneys' fees.

### D.    Costs

In addition, Mr. Johnson seeks $835 in costs. Mot. 21. This includes the filing fee ($400), service costs ($35), and investigation costs ($400). The ADA provides that the prevailing party may recover "litigation expenses[] and costs." 42 U.S.C. § 12205; *see VN Alliance LLC*, 2019 WL 2515749, at *8 (including investigation costs into litigation expenses). As such, Mr. Johnson has provided a billing statement to substantiate his request for $835 in filing fees, service costs, and investigation costs. Billing Statement 1.

## VI.    ORDER

For the foregoing reasons, IT IS ORDERED THAT:

1.  Plaintiff's motion for default judgment is GRANTED.

2.  Plaintiff is awarded statutory damages in the amount of $4,000.

3.  Plaintiff is awarded $3,710 in attorneys' fees and costs.

4.  Plaintiff is granted an injunction requiring Defendants to bring their parking lot spaces and slope, door hardware, and restroom sink into compliance with the 2010 ADAAG Standards no later than six months after service of this injunction.

Plaintiff shall promptly serve Defendants with this Order and file a proof of service with the Court.

**IT IS SO ORDERED.**

Dated: October 5, 2020

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28